UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ROBERT J. DAVIS,

    Defendant.

Case No. 19-cr-40006-JPG

## MEMORANDUM AND ORDER

This matter comes before the Court on defendant Robert J. Davis's motion for an advance ruling on the pending information pursuant to 21 U.S.C. § 851 (Doc. 74) and related response to that § 851 information (Doc. 48). He argues that application of the § 851 information in this case violates the prohibition on *ex post facto* laws in the United States Constitution because, in light of *Mathis v. United States*, 136 S. Ct. 2243 (2016), Davis would not have been subject to an enhanced sentence under the pre-First Step Act version of 21 U.S.C. § 841(b)(1)(B) but he would be subject to an enhanced sentence under the post-First Step Act version of that statute. The Government has responded to the substance of the motion, although it does not object to the Court's making a decision in advance of a plea or trial (Doc. 80). Davis has replied to that response (Doc. 82). The parties have also filed supplemental responses (Docs. 85 & 88, respectively).

**I.**     **Procedural History**

In January 2019, Davis was indicted on one count of possession with intent to distribute a mixture and substance containing crack cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C) (Doc. 1). The charge was based on alleged conduct on December 18, 2018. In February 2019, the grand jury rendered the Superseding Indictment adding the allegation that the

amount of drugs involved in the crime was 28 grams or more of crack cocaine, boosting Davis's sentencing range to that set forth in 21 U.S.C. § 841(b)(1)(B): 5 to 40 years in prison, a fine not to exceed $5 million, and a term of supervised release of at least 4 years (Doc. 17).

In April 2019, the grand jury returned a Second Superseding Indictment adding the allegation that Davis had committed the offense after he had been convicted of Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base, a "serious drug felony" under the post-First Step Act version of 21 U.S.C. § 841(b)(1)(B) (Doc. 33). The following week, the Government filed a § 851 information seeking to invoke the enhanced penalties under § 841(b)(1)(B) for defendants who have a prior conviction for a "serious drug felony"—10 years to life in prison, a fine not to exceed $8 million, and a term of supervised release of at least 8 years (Doc. 41). The § 851 enhancement clarified that the prior conviction for Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base was for violation of the Controlled Substances Act ("CSA"), 21 U.S.C. §§ 846 and 841. *See United States v. Davis*, 12-cr-40100-JPG (receiving transfer of jurisdiction from the Eastern District of Tennessee).

## II.     First Step Act of 2018

Overlaying the procedural history of this case is the December 21, 2018, enactment of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194 (2018). Section 401 of the First Step Act changed the requirements for an enhanced sentence under § 841(b)(1)(B). First Step Act § 401, 132 Stat. at 5220-21. Before December 21, 2018, § 841(b)(1)(B) authorized enhanced penalties for any person who committed a violation of § 841(a)(1) if that person had a "prior conviction for a felony drug offense that ha[d] become final." *Id.* A "felony drug offense" meant "an offense that is punishable by imprisonment for more than one year under any law of the United States . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana,

2

anabolic steroids, or depressant or stimulant substances." 21 U.S.C. § 802(44).

The First Step Act changed § 841(b)(1)(B) to allow enhanced penalties for a person who committed a violation of § 841(a)(1) "after a prior conviction for a serious drug felony . . . ha[d] become final." First Step Act § 401(a)(2)(B), 132 Stat. at 5221. In turn, the First Step Act defined a "serious drug felony" as "an offense described in section 924(e)(2) of Title 18 for which—(A) the offender served a term of imprisonment of more than 12 months; and (B) the offender's release from any term of imprisonment was within 15 years of the commencement of the instant offense." 21 U.S.C. § 802(57) (the second subsection (57)—there are two). The offenses described in 18 U.S.C. § 924(e)(2)(A)(i) include "an offense under the Controlled Substances Act (21 U.S.C. § 801 et seq.) . . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." The First Step Act applies the foregoing changes to § 841(b)(1)(B) retroactively to offenses committed before the new law was enacted on December 21, 2018, if the defendant had not been sentenced by that date. First Step Act § 401(c), 132 Stat. at 5221.

Davis is alleged to have committed the instant offense three days before the First Step Act changes. At the time of his alleged conduct, an enhanced sentence was available for a prior conviction for a "felony drug offense," but at the time of his charge and up through the present, an enhanced sentence was and is available for a prior conviction for a "serious drug felony."

## III. Analysis

Davis does not contest that his prior conviction under 21 U.S.C. § 846 qualifies as a "serious drug felony" but he maintains it does not qualify as a "felony drug offense." He argues that application of the enhanced penalties available under the First Step Act—when the relevant prior conviction is a "serious drug felony"—that were not available at the time he is alleged to

3

have committed the crime—when the relevant prior conviction was a "felony drug offense"—would make the First Step Act a prohibited *ex post facto* law, U.S. Const. art. I, § 9, cl. 3.

All parties agree that a law is a prohibited *ex post facto* law if it "changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 Dall. 386, 390 (U.S. 1798). If, indeed, the punishment provisions of the First Step Act subject Davis to greater punishment than the provisions existing at the time of his alleged conduct, applying it to him would be unconstitutional. The parties disagree, however, on whether the First Step Act subjected him to greater punishment. Specifically, the Government argues that Davis was subject to enhanced penalties even before the First Step Act because his prior conviction qualified as a "felony drug offense." Consequently, the Government contends, the changes wrought by the First Step Act do not amount to a prohibited *ex post facto* law if applied to him.

The critical issue therefore is whether Davis's prior conviction for Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base in violation of the CSA, 21 U.S.C. §§ 846 and 841(a), is a "felony drug offense." Davis argues that under the reasoning of *Mathis v. United States*, 136 S. Ct. 2243 (2016), it is not.

*Mathis* considered whether a prior conviction satisfied the definition of a "violent felony" to justify enhanced penalties under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1) and (2)(B)(ii). It reinforced that to determine whether a prior conviction counts, courts apply a "categorical approach" that involves comparing the essential elements of the crime of the prior conviction—the things that the prosecutor must prove or the defendant must admit in a guilty plea to sustain a conviction—with the definition of the enhancement-triggering conviction in the applicable statute. *Id.* at 2248. If the elements of the prior crime are the same as or narrower

than the enhancement-triggering conviction, the prior crime can be used to support the enhancement. *Id.* However, if it was *possible* to commit the prior crime without satisfying the definition in the applicable enhancement-triggering statute because the elements of the prior crime were broader than those in the enhancement-triggering conviction, the prior conviction cannot be used to support the enhancement. *Id.*

This is not a difficult comparison to make when the statute of the prior conviction sets forth a single set of elements. However, where it lists elements in the alternative, thereby defining multiple crimes with different elements, it is said that the statute is divisible, and the Court must determine which of the multiple crimes the defendant was convicted of before it can compare the elements. *Id.* at 2249. In such cases, the Court may use a "modified categorical approach" that allows it to look at a limited range of documents to determine if the defendant was convicted of a version of the crime that falls within the relevant statute's definition of the triggering prior conviction. *Id.*; *Taylor v. United States,* 495 U.S. 575, 598 (1990). These documents include things like the indictment, jury instructions, or plea agreement. This approach has been used to disqualify convictions under certain state drug laws as enhancement-triggering convictions under federal law. *See, e.g., United States v. Garcia*, 948 F.3d 789, 793 (7th Cir. 2020) (finding a conviction under an Indiana drug law cannot support an enhanced sentence under § 841(b)(1) because the list of drugs prohibited under the Indiana law is broader than the list of drugs prohibited by federal law); *Najera-Rodriguez v. Barr*, 926 F.3d 343, 348, 356 (7th Cir. 2019) (finding a conviction under one provision of the Illinois Controlled Substances Act, 720 ILCS 570/402(c), was not a crime relating to a controlled substance that could support removal under immigration laws); *United States v. Elder*, 900 F.3d 491, 501-03 (7th Cir. 2018) (finding a conviction under a Arizona statute that criminalized possessing

equipment or chemicals to manufacture drugs was not a "felony drug offense" that could support an enhanced sentence under § 841(b)(1)(A)).

Thus, in this case, to determine whether Davis's prior conviction would qualify as a "felony drug offense" to expose him to enhanced punishment under § 841(b)(1)(B), the Court must compare the elements of his crime of conviction—Conspiracy to Possess with Intent to Distribute Cocaine and Cocaine Base in violation of the CSA, 21 U.S.C. §§ 846 and 841(a)(1)—without regard to the details of that crime, with the CSA's definition of "felony drug offense." If the elements of his prior crime are the same or are narrower than the definition of "felony drug offense," the categorical approach used in *Mathis* means the prior crime qualifies as a "felony drug offense." If the elements of his prior crime reach more broadly than the definition of "felony drug offense," it does not qualify. In determining the elements of Davis's prior conviction, the Court must decide whether the statute under which Davis was previously convicted is divisible such that it may look to certain documents from Davis's criminal case to determine which crime was his crime of conviction and whether that crime sweeps more broadly than the enhancement-triggering conviction.

Davis argues that the definition of his conspiracy crime sweeps more broadly than the definition of "felony drug offense" because § 841(a)(1) criminalizes activity involving Fenfluramine, a controlled substance listed in Schedule IV but not falling into any of the categories of drugs listed in the definition of "felony drug offense": narcotic drugs, marihuana, anabolic steroids, or depressant or stimulant substances. 21 U.S.C. § 802(44). He argues that because § 841(a)(1) criminalizes a broader category of drugs than are contained in the definition of "felony drug offense" in § 802(44), his conspiracy conviction could not have been used to support the enhanced penalties in the pre-First Step Act version of § 841(b)(1)(B). *See Elder*,

900 F.3d at 497. He further argues that his prior conviction for conspiracy is not divisible, so the Court may not consult documents from his criminal case to determine which of several offenses he committed.

The Government disagrees with Davis. It contends that Fenfluramine is a stimulant substance, so it is included in § 802(44)'s definition of "felony drug offense." It points to several medical resources noting a stimulant effect of Fenfluramine, including one definition stating that Fenfluramine is "an amphetamine derivative and a sympathomimetic stimulant with appetite-suppressant properties." National Institutes of Health, U.S. National Library of Medicine, National Center for Biotechnology Information, Fenfluramine hydrochloride, https://pubchem.ncbi.nlm.nih.gov/compound/fenfluramine-hydrochloride. Second, it argues it would be nonsensical to construe the CSA as not including prior offenses under that very act in the category of "felony drug offense." This is especially true in light of the fact that for decades federal courts have, without question, found that prior CSA offenses supported enhanced penalties under 21 U.S.C. § 841(b)(1). The Government concludes that, since Davis was subject to enhanced penalties under the pre- and post-First Step Act versions of § 841(b)(1)(B), application of the post-First Step Act law causes him no detriment and therefore would not be an *ex post facto* violation.

In reply, Davis argues that, although Fenfluramine may have a stimulant effect, it is not classified in the Schedules of Controlled Substances, 21 C.F.R. Part 1308, as a stimulant but rather falls into its own Schedule IV category, 21 C.F.R. § 1308.14(d), separate from the stimulant category of that schedule. He further argues that Fenfluramine does not qualify as a "stimulant substance" as that phrase is defined in 21 U.S.C. § 802(9) because it does not contain amphetamine, is not an amphetamine-like stimulant, and has not been found by the Attorney

7

General to be habit-forming or have a potential for abuse because of its stimulant effect. He maintains that proper application of the categorical approach renders his prior conspiracy conviction insufficient to support enhanced penalties under § 841(b)(1)(B) and that, had Congress wanted to included convictions under the CSA, it could have expressly defined a "felony drug offense" to include specific CSA violations as it did when it defined "serious drug felony" in the First Step Act.

In the supplemental briefing, the Government argues that the Court is permitted to take the modified categorical approach because 21 U.S.C. §§ 846 and 841(a)(1) are divisible statutes since after *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (factors raising the statutory maximum are elements), and *Alleyne v. United States*, 570 U.S. 99, 116 (2013) (factors raising the statutory minimum are elements), drug type and quantity are essential elements of § 841 offenses where the Government seeks enhanced penalties. Davis argues that at the time of his prior conspiracy conviction in 1999, drug amount and type were considered only sentencing factors and did not define separate offenses for the purpose of triggering enhanced sentences.

The Court addresses two, not wholly independent, questions, either of which could resolve the issue in dispute. First, does the law of Davis's prior conviction, 21 U.S.C. §§ 846 and 841, criminalize more drugs—specifically Fenfluramine—than are covered under a "felony drug offense" under the pre-First Step Act version of 21 U.S.C. § 841(b)(1)(B)? Second, is the law of Davis's prior conviction, 21 U.S.C. §§ 846 and 841, divisible such that the Court may use the modified categorical approach to determine the elements of his prior conviction and whether those elements sweep more broadly than the pre-First Step Act version of 21 U.S.C. § 841(b)(1)(B)?

Fenfluramine

In May 1999, Davis was convicted under 21 U.S.C. § 846 of conspiring to commit an offense under 21 U.S.C. § 841(a)(1), namely, knowingly and intentionally distributing and possessing with intent to distribute a controlled substance, in the most general sense. The term "controlled substance" meant any drug or substance listed in Schedule I, II, III, IV or V of the CSA, 21 U.S.C. § 802(6), and included Fenfluramine, listed in Schedule IV, 21 C.F.R. § 1308.14(d). "Fenfluramine is an amphetamine derivative and a sympathomimetic stimulant with appetite-suppressant properties." National Institutes of Health, U.S. National Library of Medicine, National Center for Biotechnology Information, Fenfluramine, https://pubchem.ncbi.nlm.nih.gov/compound/fenfluramine.

The Court now asks whether the elements of Davis's prior conviction are the same or narrower than those of the enhancement under the pre-First Step Act version of 21 U.S.C. § 841(b)(1)(B). That enhancement requires a prior conviction of a "felony drug offense," defined as "an offense that is punishable by imprisonment for more than one year under any law of the United States . . . that prohibits or restricts conduct relating to narcotic drugs, marihuana, anabolic steroids, or depressant or *stimulant substances*." 21 U.S.C. § 802(44) (emphasis added). Fenfluramine clearly could only fall into the last of these categories: a stimulant substance, which the CSA defines as:

> (B) a drug which contains any quantity of (i) amphetamine or any of its optical isomers; (ii) any salt of amphetamine or any salt of an optical isomer of amphetamine; or (iii) any substance which the Attorney General, after investigation, has found to be, and by regulation designated as, habit forming because of its stimulant effect on the central nervous system; or . . .
> \* \* \*
> (D) any drug which contains any quantity of a substance which the Attorney General, after investigation, has found to have, and by regulation designated as having, a potential for abuse because of its depressant or stimulant effect on the

9

central nervous system or its hallucinogenic effect.[1]

21 U.S.C. § 802(9).

Frankly, the Court is not a chemist and cannot tell without expert opinion whether "an amphetamine derivative" like Fenfluramine qualifies as a stimulant substance because it "contains any quantity of (i) amphetamine or any of its optical isomers; (ii) any salt of amphetamine or any salt of an optical isomer of amphetamine." If Fenfluramine qualifies as a "simulant substance," Davis's prior conviction could support an enhancement under the pre-First Step Act version of § 841(b)(1)(B), and application of the post-First Step Act version of § 841(b)(1)(B) would not violate the *Ex Post Facto* Clause. If Fenfluramine does not qualify as a "simulant substance," the Court must look more closely at whether it has even determined the correct elements of Davis's prior conviction.

<u>Divisibility</u>

It is apparent after *Apprendi* and *Alleyne* that 21 U.S.C. § 841 is a divisible statute for which the modified categorical approach is warranted. It is divisible because, while the prohibitions in § 841(a) are common to all violations, various provisions of § 841(b) set forth higher punishment ranges based on additional factors, and "[i]f statutory alternatives carry different punishments, then under *Apprendi* they must be elements." *Mathis v. United States*, 136 S. Ct. 2243, 2256 (2016). The statute has been structured this way since the Anti-Drug Abuse Act was enacted in 1986.

It is true that courts used to view the elements of an offense under 21 U.S.C. § 841(a) not to include the specific type and quantity of drug involved in the crime. *See United States v.*

---

[1] There are other subsections in this definition of "depressant or stimulant substances" that clearly are not relevant to this case.

10

*Martinez*, 301 F.3d 860 (7th Cir. 2002). Drugs and amounts were essentially viewed as alternative means for committing the one crime and able to be found by a judge by a preponderance of the evidence. However, it became apparent with *Appendi* and *Alleyne* that the courts were wrong where the Government sought to impose statutory sentencing ranges higher than the range applicable to a mere commission of the conduct in § 841(a), for example, the higher ranges found in § 841(b)(1)(A) and (B). Those ranges have always required proof of drug type and/or amount, although the proper understanding of the quantum of proof and the appropriate factfinder has evolved over time. When *Apprendi* and *Alleyne* explicitly held that drug type and amount were essential elements of an enhanced sentence, the Supreme Court simply recognized what was always required to be proved, and held that it must be proved beyond a reasonable doubt to a jury or admitted by the defendant.

This understanding of § 841 was confirmed in *Burrage v. United States*, 571 U.S. 204, 210 (2014). There, the Supreme Court acknowledged the structure of § 841 and considered the enhanced penalties that could be imposed when "death resulted" from the use of drugs involved in the offense. *Id.* at 209-10. Noting that the minimum and maximum sentences to which the defendant was exposed increased where death resulted, that fact was therefore "an element that must be submitted to the jury and found beyond a reasonable doubt." *Id.* at 210. It further noted that the crime charged had two principal elements: (1) the elements of the drug crime and (2) that death resulted from the use of the drug. *Id.* The same is true for the amounts and types of drugs whenever the government seeks enhanced statutory penalties. *United States v. Paulette*, 858 F.3d 1055, 1059-60 (7th Cir. 2017) (defendant admitted elements of drug type and amount in plea agreement).

Thus, § 841 sets forth multiple, alternative versions of a crime, all of which require proof

11

of the unlawful conduct set forth in § 841(a) plus any additional facts justifying the appropriate punishment for the offense in § 841(b). So, for example, § 841 sets forth a crime for distribution of a controlled substance punishable by 10 years to life in prison, and that crime has the elements of (1) distribution of a controlled substance—with all of the various prohibited activities and types of controlled substances as alternative means—and (2) any of the drugs and threshold amounts listed in § 841(b)(1)(A)(i)-(viii)—all alternative means of committing the crime. Or that same crime justifying a mandatory life sentence with the additional element of (3) death or serious bodily injury resulted from the use of such substance. *See* 21 U.S.C. § 841(b)(1)(A); *Burrage*, 571 U.S. at 210. Section 841 also sets forth a separate crime for possession with intent to distribute a Schedule IV substance punishable by not more than 5 years in prison, and that crime has the elements of (1) possession with intent to distribute a controlled substance and (2) a drug listed in Schedule IV—Fenfluramine being an alternative means of committing that crime. *See* 21 U.S.C. § 841(b)(2). This view is confirmed by the Seventh Circuit Pattern Jury Instructions, which, if the jury determines a defendant is guilty of element (1) above, call for the jury to determine the threshold amount of the specific controlled substance proved by the Government beyond a reasonable doubt, corresponding to element (2) above. *See* Drug Quantity/Special Verdict Instructions.

Because § 841 is divisible into multiple crimes each of which is subject to a different statutory sentencing range, the Court may use the modified categorical approach to see whether a defendant was convicted of a crime that qualifies as a "felony drug offense"—like distribution of a controlled substance punishable under § 841(b)(1)(A), which does not sweep broadly enough to cover Fenfluramine offenses—or a crime that does not qualify as a "felony drug offense"— like distribution of a Schedule IV controlled substance punishable under § 841(b)(2), which

sweeps more broadly than the definition of "felony drug offense" by including Fenfluramine.

Davis argues that since he was sentenced during a period where drug type and amount were not considered "elements" of his offense, the Court cannot now consider them such. Davis fails to realize that while the Supreme Court's understanding of 21 U.S.C. § 841 has changed, *the statute itself has not* in any relevant way. What is an element now was also an element then even if courts did not recognize it as such. For this reason, this Court may properly view the statute as divisible in the case at bar.

Because the statute of Davis's prior conviction is divisible, the Court may consult a limited range of documents—including his prior indictment—to determine the crime of which he was convicted and its elements. The indictment from his prior crime indicates the controlled substance involved in his prior crime was cocaine and cocaine base, substances which are only punishable under § 841(a) through § 841(b)(1)(A), (B), or (C). The crimes punished under § 841(b)(1)(A), (B), or (C) do not encompass activities involving Fenfluramine, so their elements do not sweep more broadly than the definition of "felony drug offense." Therefore, they could have been used pre-First Step Act to enhance Davis's sentence under §§ 851 and 841(b)(1)(B) based on a "felony drug offense." Because Davis was subject to an § 851 enhancement both before and after the First Step Act, enhancement of his sentence for a "serious drug felony" under the post-First Step Act version of § 841(b)(1)(B) would not amount to application of an *ex post facto* law.[2]

---

[2] The United States Supreme Court's opinion in *Shular v. United States*, No. 18-6662, 2020 WL 908904 (U.S. Feb. 26, 2020) (considering the Armed Career Criminal Act's description of a state 'serious drug offense'), was issued while this order was in the final editing process. The Court has reviewed that decision carefully and finds that it does not change the analysis in this order. It is true that the CSA's definition of a "felony drug offense," 21 U.S.C. § 802(44), at issue in this case is akin to the ACCA's description of a state "serious drug offense," 18 U.S.C. § 924(e)(2)(A)(ii), in *Shular*. The ACCA's definition describes the prior qualifying offenses in

**IV.     Conclusion**

For the foregoing reasons, the Court **GRANTS** the motion for an advance ruling as to application of the "serious drug felony" enhancement at sentencing (Doc. 74) and **FINDS** that the "serious drug felony" enhancement can be applied without *ex post facto* concerns.

**IT IS SO ORDERED.**
**DATED:  March 2, 2020**

                                            s/ J. Phil Gilbert
                                            **J. PHIL GILBERT**
                                            **DISTRICT JUDGE**

---

terms of "offenses . . . involving" certain *conduct*, and the CSA's definition describes prior qualifying offenses in terms of "offenses . . . that *prohibit or restrict conduct* relating to" specific categories of controlled substances (emphasis added).  However, as noted in this order, a conviction under § 841(a) may be for drugs that do not fall into those specific categories of controlled substances, so it is appropriate to apply a categorical approach—here, the modified categorical approach—to see if a prior conviction qualifies under the enhancement-triggering provision.